NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

|  |  |  |
|---|---|---|
| SAMUEL ELLISON, | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No. 06-CV-4977 (DMC) |
|  | : |  |
| B.J.'S, INC., a corporation and/or B.J.'S | : |  |
| WHOLESALE CLUB #44, a corporation, | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

---

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by B.J.'S Wholesale Club, Inc. ("Defendant") for summary judgment pursuant to FED. R. CIV. P. 56, with respect to Samuel Ellison's ("Plaintiff") claims. Pursuant to FED. R. CIV. P. 78, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **granted**.

## I.    BACKGROUND[1]

### A.    Plaintiff's Background Preceding his Employment with Defendant

In 1995, Plaintiff was charged with aggravated assault and resisting arrest by elbowing a police officer in the mouth, causing his lip to bleed and threatening to kill a uniformed police officer. (Anders Cert. at Exhibit A.) On September 25, 1995, Plaintiff pled guilty to the aggravated assault charge. Plaintiff was later arrested for unlawful possession of a weapon and

---

[1]The facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' FED. R. CIV. P. 56.1 statements in their respective moving papers.

was convicted in April 1997. Plaintiff's conviction violated the terms of his probation from his earlier convictions. Then, on or about November or December 1998, Plaintiff was charged with possession of cocaine, a controlled dangerous substance. On April 20, 1999, Plaintiff was indicted yet again for unlawful possession of a firearm and on September 24, 1999, Plaintiff pled guilty to the offense.

**B.**     **Plaintiff's Employment Application**

On December 17, 2003, Plaintiff completed and signed a job application for employment with Defendant (the "Application"). The Application required applicants to identify *all* prior work experience over the past fifteen years. By signing the Application, Plaintiff agreed to the Application's terms:

> I agree to conform to the rules and regulations of the Company and acknowledge that my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself.

(Hicks Cert. at Exhibit A.) Plaintiff's testimony confirmed that he understood the Application's terms. By signing the Application, Plaintiff also represented that all of the information contained therein was true and accurate and that any falsification or material omission would constitute grounds for dismissal.

During discovery, the Application was exposed to contain several material omissions and/or misrepresentations. Among these discrepancies was Plaintiff's identification of only one employer under his "Employment History," Dillion Tire. Plaintiff also represented that this employment ended because of a "lay off." Conversely, Plaintiff testified that he was forced to leave Dillion Tire because he was incarcerated and that his representation on the Application was false. Plaintiff also failed to identify his previous employment with Pathmark, where he worked

immediately before commencing his employment with Defendant.

C.    **Defendant's Employee Handbook and Progressive Discipline Policy**

On December 6, 2004, Defendant hired Plaintiff as a "ticketer." Plaintiff testified that Defendant provided him with a copy of the Club Team Member Guide ("Handbook") when he commenced his employment and instructed him to read it. Plaintiff testified that he read the Handbook. The Handbook explained Defendant's Progressive Discipline Policy ("Policy"). Based on the severity of the violation, several different disciplinary steps may be imposed under the Policy, including (1) verbal corrective; (2) written corrective; (3) final written corrective; and (4) termination of employment. (Hicks Cert. at Exhibit C.) Furthermore, Defendant's Workplace Guidelines ("Guidelines") characterize potential infractions into three groups (*i.e.*, Level I, Level II and Level III) according to a plethora of factors related to the severity and frequency of the infraction. Plaintiff's testimony confirms that he reviewed the Policy and understood that it austerely prescribed refusing to follow a manager's instruction as insubordination. Insubordination constitutes a Level II violation and carries a minimum disciplinary action of final written corrective action and, depending on the circumstances, possible termination. Plaintiff further testified that he understood that he could be terminated under the Policy if he threatened another employee. A threat of violence constitutes a Level III violation and may warrant immediate termination.

D.    **Plaintiff's Job Performance**

Plaintiff's primary duties as a ticketer on the overnight shift included stocking shelves and preparing the store to be opened each day. The mid-merchandise managers were responsible for preparing the performance evaluations for all ticketers, including Plaintiff. Plaintiff reported

3

directly to the mid-merchandise managers who worked on the overnight shift (*i.e.* Boguslawa Szwec and Evan Patterson). The mid-merchandise managers, in turn, reported to Bharat Singh, the senior overnight manager of the Jersey City store. Plaintiff confirmed that he maintained a good working relationship with all three managers.

### E.  **Plaintiff's Attendance**

In September 2005, Plaintiff received his regular performance appraisal from his direct manager, Boguslawa Szwec. Under the section entitled "Reliability," Plaintiff was rated "Needs Improvement" because he "comes to work late quite often." Prior to receiving this evaluation, Plaintiff had been late to work approximately fifteen times. Plaintiff admits that he was frequently late to work. In fact, Plaintiff's attendance issues led to several disciplinary actions pursuant to the Policy: (1) verbal counseling for lateness on March 28 and April 1, 2005; (2) verbal counseling for lateness on April 3 and 8, 2005; (3) verbal counseling for unauthorized lateness on May 15, 17 and 20, 2005; (4) first verbal warning for unauthorized lateness on May 26 and 28, 2005; (5) first verbal warning for unauthorized lateness on November 27, 2005; (6) first verbal warning for unauthorized lateness on December 2, 2005; (7) first written warning for a "no call no show" on January 23, 2006; and (8) final written warning for unauthorized lateness on January 24, 2006. Plaintiff's final written warning subjected him to termination in the event of any subsequent violations of the Policy.

### F.  **Plaintiff's Leave of Absence**

On February 13, 2006, Plaintiff missed work, allegedly due to high blood pressure and a headache. Plaintiff testified that he based his belief that he had high blood pressure, prior to

visiting his physician, on a machine located at his workplace. Furthermore, Plaintiff testified that he based his belief that his headaches were related to his high blood pressure solely on his family history. When Plaintiff contacted Defendant's personnel office to inform them that he would not be at work, he was told "That's okay. Just bring a doctor's note when you come back to work." Plaintiff's testimony confirms, however, that he did not provide Defendant with any additional information regarding his purported need for medical leave. Plaintiff submitted a note, allegedly from Dr. Jonathan Gibbs, stating that Plaintiff was "medically disabled" from February 13 through February 20, 2006 and was not cleared to return to work until February 20, 2006. Dr. Gibbs, however, possesses no record of ever treating Plaintiff. Although Plaintiff was purportedly cleared to return to work on Monday, February 20, 2006, Plaintiff did not attempt to return to work that day. On February 21, 2006, Plaintiff was treated at the Greenville Hospital emergency room for Bell's Palsy and hypertension. Although Plaintiff was instructed to follow-up with his physician two days later (*i.e.*, February 24, 2006), Plaintiff failed to do so until March 2, 2006 – more than one week later. Furthermore, Plaintiff did not report to work during the period between February 21 and March 2, 2006. On March 2, 2006, after visiting Dr. Michael Badin, Plaintiff was admitted to Greenville Hospital for high blood pressure and he was discharged on March 5, 2006. On March 6, 2006, Dr. Badin cleared Plaintiff to return to work on March 7, 2006.

       **G.**      **Plaintiff's Return to Work After Sick Leave**

On March 7, 2006, Plaintiff reported to work and spoke with Rafat Raghib, the General Store Manager, about returning to work. Raghib instructed Plaintiff to report to work that

evening. Defendant utilizes an electronic timekeeping system whereby employees use a magnetic swipe card to record their arrivals, breaks and departures. If an employee is not scheduled to work, the system will not permit the employee to "punch in" for work without a manager's override card. Because Plaintiff had only obtained approval to return to work that morning, Plaintiff was not listed on the schedule, so he requested Singh's override card to "punch in." A dispute between Plaintiff and Singh ensued thereafter wherein they became engaged in an argument. Singh reported that the argument culminated with Plaintiff pointing his finger in Singh's face and stating, "I will kill your ass." (Hick's Cert. at Exhibit K; Ander's Cert. at Exhibit D.) Singh then immediately instructed Plaintiff to leave the store, but Plaintiff refused. Singh then threatened to contact the police if he did not leave the store. After initially refusing Singh's instruction, Plaintiff eventually did leave the store. There were no witnesses to the incident. Shortly after Plaintiff left the store, Singh memorialized the event in an incident report.

On March 8, 2006, Singh spoke with Raghib regarding the incident. Raghib testified that Singh informed him that Plaintiff threatened Singh during the confrontation. On March 8, 2007, Plaintiff returned to the store to speak with Raghib and prepared a written statement. During his conversation with Raghib, Plaintiff confirmed that there were no witnesses to the incident. In response, Raghib informed Plaintiff that he would investigate the matter and asked Plaintiff to call him in a few days.

**H.**     **Defendant's Decision to Terminate Plaintiff's Employment**

Raghib conducted an independent investigation, wherein he reviewed the video cameras from the area where Plaintiff and Singh stated that the altercation occurred. Raghib was unable,

6

however, to view the incident because the altercation occurred outside of the camera's range. Raghib also questioned Alfredo, the loss prevention manager on duty that evening, who stated that he did not witness the incident. Ultimately, Raghib found Singh's version of the events to be more credible for several reasons, including Singh's long history with Defendant, his management performance record and the respect the other members of the overnight crew have for him. Raghib also based his decision on Plaintiff's documented issues regarding attitude and temper in the workplace, including Szwec's opinion. Following his independent investigation, Raghib recommended Plaintiff's termination. The basis for the decision was, *inter alia*, Plaintiff's admitted insubordination (*e.g.*, refusing to leave the store when initially instructed to do so by his superior) and Plaintiff's verbal threat to kill Singh. Notwithstanding Plaintiff's assertion that he did not threaten to kill Singh, Raghib concluded that Plaintiff's admitted insubordination alone compelled his termination.

Pursuant to the Policy, a member of Defendant's Human Resources Department must approve all termination decisions at the store level. Raghib contacted Caroline Hicks, Defendant's Area Human Resources Manager, to discuss Plaintiff's termination. After reviewing the matter, Hicks agreed with, and approved of, Raghib's decision to terminate Plaintiff's employment. Hicks approved Plaintiff's employment termination for several reasons: (1) Plaintiff admitted that he was insubordinate for refusing Singh's instruction to leave the store; (2) Plaintiff was previously counseled by a different manager regarding his temper, which supported Defendant's finding that he verbally threatened his supervisor; (3) Singh was a long-term employee with a good performance record who was well-respected by his peers; and (4) Plaintiff

was on a final written warning and, consistent with the Policy, any further violations justified Plaintiff's immediate termination. Therefore, Raghib and Hicks made the ultimate decision to terminate Plaintiff's employment. Singh did not recommend that Plaintiff's employment should be terminated and he was not authorized to fine employees. Plaintiff admits that his contention that Singh was authorized to fire him is merely speculation. Singh does not know who made the decision to terminate Plaintiff's employment or when that decision was made. On March 10, 2006, Raghib advised Plaintiff that his employment was terminated. Plaintiff contends that it was Singh who actually fired him. Plaintiff's testimony, however, contradicts this position because he confirmed that he was suspended, as opposed to being terminated, upon his return to work the day following his verbal altercation with Singh. Plaintiff later revealed, however, that the claim that his termination was motivated by his medical condition is premised solely on him receiving medical treatment.

## II.   STANDARD OF REVIEW: FED. R. CIV. P. 56 SUMMARY JUDGMENT

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  See id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to

satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). However, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences – including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp. 2d 807, 815 (D. N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D. N.J. 1980)).

## III.   DISCUSSION

Plaintiff instituted this action against Defendant asserting claims under both the New Jersey Law Against Discrimination ("NJLAD") and the Family Medical Leave Act ("FMLA"). The record evidence precludes a rational factfinder from concluding that Plaintiff's termination resulted from anything other than his workplace conduct and, thus, Plaintiff has failed to demonstrate that a triable issue of fact exists in this matter.

### A.   Plaintiff's NJLAD Claim

Plaintiff alleges that his termination was the result of disability discrimination under the NJLAD. Plaintiff has failed to offer any competent evidence that would permit a reasonable factfinder to conclude that he was discharged due to disability discrimination. Conversely, Defendants have put forth legitimate, non-discriminatory reasons behind their decision to

discharge Plaintiff.

A *prima facie* cause of action for disparate treatment discrimination under the NJLAD requires a plaintiff to demonstrate that he or she: (1) was disabled (or perceived to be disabled); (2) was objectively qualified for his or her former position; (3) was terminated from that position; and (4) that the employer sought to, or did fill the position with a similarly qualified person. See Zive v. Stanley Roberts, Inc., 182 N.J. 436, 450 (2005). If the plaintiff meets this burden, the employer must then articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. See Andersen v. Exxon Co., 89 N.J. 483, 493 (1982). If the employer in turn articulates a legitimate reason for the plaintiff's discharge, the presumption of discrimination disappears and the burden reverts back to the plaintiff to demonstrate that the employer's proffered reason is merely pretext for disability discrimination. See Gerety v. Atl. City Hilton Casino Resort, 184 N.J. 391, 399 (2005); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993).

### 1.      **Plaintiff's Alleged Disability**

Plaintiff failed to satisfy the initial burden of establishing that he was either disabled or perceived to be disabled at the time Defendant terminated his employment. Plaintiff must establish that he was "(1) suffering from physical disability, infirmity, malformation or disfigurement (2) which is caused by bodily injury, birth defect or illness including epilepsy." Ireland v. Borough of Haddonfield, 2006 U.S. Dist. LEXIS 65286, *17 (D. N.J. 2006).

Plaintiff has failed to offer any evidence demonstrating that he was disabled, or perceived by Defendant to be disabled, at the time of his discharge on March 10, 2007. On February 13,

2006, Plaintiff missed work, purportedly due to Plaintiff's high blood pressure and a headache.

Plaintiff testified that he based his belief that he had high blood pressure on a machine at his

workplace that employees used to measure blood pressure. Furthermore, Plaintiff testified that

his sole basis for believing that his headaches were related to his high blood pressure was his

family history.

      In Oare v. Midatl. Nat'l Bank/Merchs., this Court determined that a plaintiff could not

assert a disability discrimination claim after his physician cleared him to return to work without

restriction. See 1990 U.S. Dist. LEXIS 689, *13-14 (D. N.J. 1990). This Court observed:

> Plaintiff also apparently contends that he was discharged because he was
> handicapped and/or in retaliation for his having filed a workmen's
> compensation claim. Oare argues that he was handicapped on the date of his
> termination, because the medical certificate of his physician states that his
> period of disability would extend to June 3, 1988. This certificate was signed
> by the doctor on April 19, 1988. Plaintiff ignores a subsequent certificate
> which the same physician signed on May 10, 1988, that states that Oare was
> incapacitated from April 11, 1988, to May 16, 1988, the date he returned to
> work. The latter certificate does not prescribe any limitations on Oare's
> activities. The court is of the opinion that the second certificate superseded
> the first and that plaintiff's period of disability ended on May 16, 1988;
> therefore, he was not disabled at the time of his termination. Further, he has
> not proffered any evidence that indicates that his injury was a factor in the
> decision to discharge him.

Id. (internal citations omitted).

      As in Oare, Plaintiff's physician, Dr. Badin, deemed Plaintiff fit to return to work without

restriction prior to his termination. Plaintiff, therefore, cannot meet his burden of producing

sufficient "expert medical evidence" that he was disabled. See Sarnowski, 2005 U.S. Dist.

LEXIS 35559 at *7. Similarly, Plaintiff cannot provide any competent evidence demonstrating

that he was perceived by Defendant to be disabled. It is undisputed that Raghib permitted

11

Plaintiff to return to full duty immediately upon receiving Dr. Badin's note that Plaintiff was cleared to return to work on March 7, 2006. Therefore, Plaintiff's unfounded disability discrimination claim fails as a matter of law. See, e.g., Sagaral v. Mountainside Hosp., 2001 U.S. Dist. LEXIS 6838, *18 (D. N.J. 2001).

> ### 2.    Plaintiff's Employment was Terminated Based on Legitimate, Nondiscriminatory Reasons Relating to his Workplace Conduct

Defendant's decision to terminate Plaintiff's employment was due solely to Plaintiff's workplace conduct, namely Defendant's repeated attendance infractions and a verbal altercation with Singh. At the time of Plaintiff's verbal altercation with Singh, Plaintiff was on the final disciplinary step of the Policy which subjected him to termination for *any* further violations of the Policy.

### a.    Plaintiff's Attendance

Subject to the severity of the violation, the Handbook provides for several disciplinary actions: (1) verbal corrective; (2) written corrective; (3) final written corrective; and (4) termination of employment. In conjunction with this policy, the Guidelines divide potential infractions into three groups (*i.e.*, Level I, Level II and III) according to the severity and frequency of the offense.

Plaintiff repeatedly violated Defendant's attendance policies by either arriving to work late or not at all. In or about September 2005, Plaintiff received a "Needs Improvement" score under the category of "Reliability" in his annual performance apprisal due to his attendance issues. Szwec noted that Plaintiff "comes to work late quite often" in his performance appraisal. Despite signing the apprisal, Plaintiff testified that he was never counseled by Defendant for

12

excessive lateness. These attendance issues led to Plaintiff receiving several disciplinary

corrective actions. Under the Policy, any further violations subjected Plaintiff to immediate

termination.

###    b.    Plaintiff's Altercation with his Supervisor

Plaintiff was still on final written corrective status upon his return to work on March 7,

2006. When Plaintiff reported to work that evening, a verbal altercation arose between Plaintiff

and Singh. In Plaintiff's written statement, he confirmed that (1) Raghib had authorized his

return on March 7, 2006; (2) he sought an override from Sigh because he was unable to punch in

for his shift; (3) a verbal confrontation occurred between him and Singh and that Plaintiff refused

to leave the store upon Singh's request.

During Raghib's independent investigation, he found Singh's account of the events more

credible than Plaintiff's account for several reasons. Raghib then contacted Hicks, consistent

with the Policy, to review his decision to terminate Plaintiff. Hicks approved the decision to

terminate Plaintiff's employment based on several grounds: (1) Plaintiff's admission that he

refused to leave the store and was, therefore, insubordinate; (2) prior warnings regarding

Plaintiff's attitude and temper, which supported Defendant's finding that Plaintiff verbally

threatened his supervisor; (3) Singh's exemplary performance record and reputation; and (4)

Plaintiff's status on final written warning under the Policy.

Thus, Defendant's decision to terminate Plaintiff's employment was based on legitimate,

non-discriminatory reasons. Defendant has met its evidentiary burden requirng Plaintiff to

demonstrate pretext. See Andersen, 89 N.J. at 493.

13

3.      **Plaintiff Has Not Produced Competent Evidence Demonstrating that the Proffered Reasons for his Discharge were Pretext for Disability Discrimination**

Under the NJLAD, Plaintiff bears the ultimate burden of demonstrating intentional discrimination based on his purported disability. See Clowes v. Terminix Int'l, 109 N.J. 575, 596 (1988). In order to escape summary judgment, Plaintiff must demonstrate that Defendant's proffered reasons for his termination are pretext for discrimination. See Zive, 182 N.J. at 449. Plaintiff can satisfy this burden by either: (1) discrediting Defendant's proffered reasons; or (2) demonstrating that intentional disability discrimination "was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). In order to discredit Defendant's proffered reasons for his discharge, Plaintiff must highlight sufficient "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Id. Although Plaintiff is entitled to certain inferences, such inferences "must be rational and reasonable, not idle, speculative, or conjectural." Unida v. Levi Strauss & Co., 986 F.2d 970, 980 (5th Cir. 1993). Thus, Plaintiff's burden to show pretext "is not insignificant." El-Sioufi, 382 N.J. Super. at 174.

The controlling issue here is whether Raghib's and Hick's termination decision was motivated by discriminatory animus. See Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979). Plaintiff has not presented any competent evidence to suggest that their independent reviews and subsequent decisions were motivated by discrimination. Plaintiff cannot meet his pretext burden by second-guessing the wisdom of Defendant's decision to terminate his

employment. See Fuentes, 32 F.3d at 765; see also Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997); Kelly v. Drexel Univ., 94 F.3d 102, 109 (3d Cir. 1996). Any challenge, therefore, to Raghib and Hicks's decision in this matter is inapposite to Plaintiff's pretext burden.

Plaintiff cannot offer any competent evidence to cast doubt on the legitimacy of Defendant's reasoning for terminating Plaintiff's employment. Plaintiff cannot meet his pretext burden by his self-serving allegation that Singh fired him on March 7, 2007 for purportedly having to do Plaintiff's work while he was out on medical leave. See, e.g., Dyszel v. Marks, 6 F.3d 116, 129 (3d Cir. 1993); Sagaral, 2001 U.S. Dist. LEXIS 6838 at *38-39. Plaintiff's testimony confirms that Singh did not terminate his employment. Plaintiff does not attempt to, nor can he, offer any other form of proof to permit a reasonable factfinder to conclude that Singh was authorized to terminate his employment. Plainitff's assertion that Singh fired him is further belied by the fact that Singh instructed Plaintiff to return to the store later that day to speak with Raghib. Furthermore, it is undisputed that Plaintiff was on final written corrective action for attendance issues, which warranted his termination in the event of any further violation of the Policy. While Plaintiff testified that he was never counseled for lateness despite written warning memoranda stating otherwise, his signed performance appraisal notes issues with excessive lateness. Plaintiff's testimony also confirms that he was late for work "on occasion" due to having "to catch public transportation."

15

The Third Circuit has held that proof of a discharge premised on attendance issues precludes a finding of pretext in a disability discrimination case:

> Even if we were to assume that Kaufmann succeeded in establishing causality and thus presented a prima facie case of retaliation, we cannot conclude that Kaufmann has shown GMAC used poor attendance as a pretext for her termination. Kaufmann has failed to "submit evidence which: 1) casts sufficient doubt upon . . . the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause" on the termination. Kaufmann argues that Richards' deposition testimony undermines defendant's claim that Kaufmann was fired because of her attendance. Richards testified that she did not know why Kaufmann was leaving GMAC, but she assumed that Kaufmann left voluntarily. Even though Richards' assumption was incorrect, her testimony does not contradict "the core facts put forward by the employer as the legitimate reason for its decision." The record indicates Kaufmann's irregular attendance concerned her supervisors, both Richards and Smith, months before her termination. Attendance is a legitimate reason for terminating Kaufmann, and Kaufmann has not presented evidence that suggests this reason was pretextual.

Kaufmann v. GMAC Mortg., 2007 U.S. App. LEXIS 15963, *13-14 (3d Cir. 2007) (internal citations omitted).

Plaintiff admitted that his claims are premised upon speculation and conjecture:

> Q:   Other than the fact that you were terminated after you were released from the hospital, do you have any other facts which would support your claim that [Defendant's] decision to terminate your employment was in any way motivated by your medical condition?
> A:   No, sir, I don't.

(S.O.F. at ¶ 98). Contrary to Plaintiff's position, medical treatment alone does not support a basis for a finding of discrimination or retaliation. Based on these facts, Plaintiff is unable to demonstrate that the termination decision was imprudent, much less pretext for discrimination. Accordingly, Plaintiff is incapable of demonstrating that Defendant's proffered reasons for his

termination are pretext under the NJLAD and, therefore, his disability discrimination claims are dismissed as there are no genuine issues of material fact to warrant trial.

**B.**     **Plaintiff's FMLA Claim**

Plaintiff asserts that Defendants violated his rights under the FMLA, 29 U.S.C. § 2601, *et. seq*., by terminating his employment. To establish a claim under the FMLA, an employee must demonstrate that: (1) he or she is eligible for rights under the FMLA; (2) the defendant employer is subject to the FMLA; (3) he or she provided notice to the employer regarding his or her intent to utilize FMLA leave; and (4) the employer violated his or her FMLA rights. See Deery v. Port Auth. Transit. Corp., 2006 U.S. Dist. LEXIS 62870, *10 (D. N.J. 2006). Two causes of action are available under this test: (1) "retaliation" for the exercise of FMLA rights; and (2) "interference" with substantive rights provided to eligible employees under the FMLA. See Tanganelli v. Talbots, Inc., 169 Fed. Appx. 123, 126 (3d Cir. 2006).

At the outset, Plaintiff's FMLA claim is facially defective because "Plaintiff fails to cite which provisions of the FMLA under which he is seeking relief." See, e.g., Johnson v. U.S. Postal Servs., 2007 U.S. Dist. LEXIS 47313, *13 (D. N.J. 2007). The Complaint merely asserts that Plaintiff was qualified for FMLA benefits and they were denied to him as a result of his termination.

**1.**     **Plaintiff Failed to Demonstrate that a Triable Issue of Fact Exists in Support of a Retaliation Claim**

In order to establish a retaliation claim under the FMLA, a plaintiff must show that (1) he or she exercised his or her rights under the FMLA;  (2) there was an adverse employment action; and (3) a causal connection exists between his or her protected activity and termination. See

Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff meets the *prima facie* burden, a rebuttable presumption of unlawful retaliation arises and the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the plaintiff's termination. See Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 488 (D. N.J. 2002). If the defendant then satisfies its burden, the burden reverts to the plaintiff to show that the proffered reason for the termination was a pretext for retaliation. See id.; see also Hackett v. Cmty. Behavioral Health, 2006 U.S. App. LEXIS 6520, *10-11 (3d Cir. 2006). Here, Plaintiff's retaliation claim fails because he cannot meet his *prima facie* burden or establish that Defendant's proffered reasons for his discharge were pretext for retaliation.

### a.     Plaintiff's *Prima Facie* Burden

Plaintiff has failed to set forth sufficient evidence to raise a genuine issue of material fact. First, Plaintiff is unable to show that he properly exercised his rights under the FMLA because he failed to provide Defendants with sufficient notice to determine the need for FMLA leave. See 29 C.F.R. § 825.208(a)(1);  29 C.F.R. § 825.303(a). Second, Plaintiff failed to establish any connection for a rational factfinder to conclude that there was a causal nexus between his medical leave and his termination. See, e.g., Tucker v. County of Monmouth, 159 Fed. Appx. 405, 408 (3d Cir. 2005); Ashton v. AT&T Co., 2007 U.S. App. LEXIS 4338, *15 (3d Cir. 2007).

In order "[t]o trigger application of the FMLA, an employee must provide his employer with notice that leave is necessary." Johnson v. Thru Point, Inc., 160 Fed. Appx. 159 (3d Cir. 2005). An employee giving notice of the need for unpaid FMLA leave must explain the reasons for the needed leave so the employer can determine whether the leave qualifies. if the employee

fails to explain the reasons, leave may be denied. See 29 C.F.R. § 825.208(a)(1); Sherrod v. Phila. Gas Works, 57 Fed. Appx. 68, 72-73 (3d Cir. 2003) (citing  29 C.F.R. § 825.208(a)(1)). Where "the need for leave is not foreseeable, an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case."  29 C.F.R. § 825.303(a). The language "as soon as practicable" requires notice "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." Hughes v. City of Bethlehem, 2007 U.S. Dist. LEXIS 22409, *35 (E.D. Pa. 2007).

Plaintiff confirmed, in his testimony, that he failed to provide Defendant with a "qualifying reason" behind his purported need for FMLA leave as a matter of law. Plaintiff confirmed that he did not provide Defendant with any additional information necessary to determine the need for FMLA leave. Plaintiff had ample opportunity to provide further information regarding his medical status to enable Defendant to determine whether he was entitled to FMLA leave, but he failed to do so. See, e.g., Woods v. DaimlerChrysler Corp., 409 F.3d 984, 993 (8th Cir. 2005). Plaintiff was not actually admitted to the hospital until March 2, 2006 – seventeen days after he initially called-out of work sick. Plaintiff's unexplained silence during his absence from work does not meet the notice requirement "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).

It is well-settled that merely calling-out sick from work is insufficient to meet an employee's notice standard under the FMLA. See, e.g., Phillips v. Quebecor World RAI, Inc., 450 F.3d 308, 312 (7th Cir. 2006); Walton v. Ford Motor Co., 424 F.3d 481, 487 (6th Cir. 2005);

19

Collins v. NTN-Bower Corp., 272 F.3d 1006, 1008-09 (7th Cir. 2001); Satterfield v. Wal-Mart Stores, 135 F.3d 973, 981 (5th Cir. 1998); Hughes, 2007 U.S. Dist. LEXIS 22409 at *37; Hall v. SERV Ctrs. of N.J., Inc., 2006 U.S. Dist. LEXIS 60515, *13 (D. N.J. 2006); Peoples v. Coastal Office Prods., 203 F. Supp. 2d 432, 451 (D. Md. 2002); Walters v. A&P Supermarket Servs., 2001 U.S. Dist. LEXIS 2696, *14 (M.D. Pa. 2001). Thus, Plaintiff failed to meet his burden of providing Defendant "with notice sufficient to make [Defendant] aware that [his] absence is due to potentially FMLA-qualifying reason." Taylor v. Virtua Health, Inc., 2007 U.S. Dist. LEXIS 45800, *24 (D. N.J. 2007). Plaintiff's notification that he would be out of work on February 13, 2006 due to a headache and self-diagnosed high blood pressure did not permit Defendant to conclude that he had a serious health condition. Plaintiff has failed to produce any evidence that Plaintiff was unable to provide adequate notice during the seventeen-day period prior to being admitted to the hospital. Therefore, it would contravene the FMLA's design to impose a duty on Defendant to obtain further information under these circumstances because no reasonable factfinder could conclude that Defendant retaliated against Plaintiff for a protected activity that did not occur. See, e.g., Reid-Falcone v. Luzerne County Smty. Coll., 2005 U.S. Dist. LEXIS 12713, *27 (M.D. Pa. 2005).

Plaintiff is incapable of meeting his *prima facie* burden because he is unable to establish a causal relationship between his medical leave and subsequent termination. Courts have observed two primary factors in determining causality: timing and a pattern of antagonism. See Hare v. Potter, 220 Fed. Appx. 120, 128 (3d Cir. 2007); Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 288 (3d Cir. 2001). Courts, however, are obliged to consider the record as a whole

when determining causation. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d Cir. 2000). In this light, the record evidence precludes a reasonable factfinder to conclude that there is a cusal nexus.

In the current case, Plaintiff's entire argument relates to his brief verbal altercation with Singh. Specifically, Plaintiff asserts that Singh fired him during the confrontation for purportedly having to do Plaintiff's work while he was gone, an assertion Singh denies. This unfounded assertion, however, is belied by Plaintiff's admission that he was, in fact, not fired by Singh, but rather suspended by Raghib pending his investigation. Plaintiff's reliance on an unsubstantiated and self-contradicting assertion is insufficient to escape summary judgment. See Versarge, 984 F.2d at 1370. Plaintiff ignores the fact that Singh played no role in the decision to terminate his employment, which was the result of independent reviews by Raghib and Hicks. As such, any purported verbal exchange with Singh regarding Plaintiff's sick time is immaterial. See Pharakhone v. Nissan N. Am., Inc., 324 F.3d 405, 407 (6th Cir. 2003).

Courts ultimately must "consider whether a reasonable jury could link the employer's conduct to retaliatory animus." Hare, 220 Fed. Appx. at 128. That is, "each case must be considered with a careful eye to the specific facts and circumstances encountered." Farrell, 206 F.3d at 279. Generally, the "mere passage of time is not legally conclusive proof against retaliation." Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997) (citing Robinson v. Southeastern Pa. Transp. Auth., 982 F.2d 892, 894 (3d Cir. 1993)). Courts have observed that "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." Krouse, 126 F.3d at 503.

21

Plaintiff's employment was terminated three days after he returned to work. Plaintiff, however, can offer no more than coincidental timing in support of his retaliation claim. Plaintiff's testimony confirms that he has no competent evidence suggesting that his discharge "was in any way motivated by his medical condition." Moreover, the fact that Plaintiff's termination occurred three days after his return to work is not "unusually suggestive" in light of the circumstances. Plaintiff's termination was made in response to Plaintiff's conduct during a verbal altercation with Singh. Therefore, even if Plaintiff was entitled to FMLA benefits, he certainly was not immunized from adverse employment decisions unrelated to his protected activity. See 29 C.F.R. § 825.216; see also Holpp v. Integrated Communs. Corp., 214 Fed. Appx. 176, 178-79 (3d Cir. 2007).

### b.    Plaintiff Cannot Meet His Burden of Demonstrating Pretext as a Matter of Law

Assuming *arguendo* Plaintiff is able to meet his *prima facie* burden, he is nevertheless unable to demonstrate that Defendant's proffered reasons for his termination are pretext for retaliation. Plaintiff's own testimony confirms that his contention that his termination was unlawful is premised upon speculation. Plaintiff is unable to establish any such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Defendant's] reasons" to permit a rational factfinder to discredit them. See Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 583 (D. N.J. 2005).

### 2.    Plaintiff's Claim for Interference of his FMLA Rights

To establish an interference claim under the FMLA, Plaintiff "needs to show that he was entitled to benefits under the FMLA and that he was denied them." Sommer v. The Vanguard

22

Group, 461 F.3d 397, 399 (3d Cir. 2006). The FMLA contains the following types of provisions applicable to Plaintiff's claims: (1) "a serious health condition that makes the employee unable to perform the functions of the position of such employee" (29 U.S.C. § 2612(a)(1)(D)); and (2) reinstatement "to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment" (29 U.S.C. § 2614(a)(1)(B)). Plaintiff cannot show that he was entitled to FMLA benefits or that he was denied such benefits as a matter of law. See Sommer, 461 F.3d at 399.

Plaintiff was not entitled to FMLA benefits because he failed to provide sufficient notice to Defendants "of the need for FMLA leave." 29 C.F.R. § 825.303(a). Plaintiff's lack of communication with Defendant during his leave precluded Defendant from determining whether Plaintiff's purported illness was covered under the FMLA. See, e.g., Sherrod, 57 Fed. Appx. at 73; Sarnowski, 2005 U.S. Dist. LEXIS 35559 at *4-5. Thus, Plaintiff cannot satisfy the *prima facie* requirement of an interference claim.

Plaintiff is also unable to show that he was denied FMLA benefits as it is undisputed that he was provided sufficient medical leave to enable him to work without restriction. Plaintiff was purportedly out of work due to sickness from February 13 through March 7, 2006. Defendant advised Plaintiff that it was permissible for him to be absent during this period and at no time required him to return to work upon a specific date. On March 7, 2006, Plaintiff returned to work after his physician deemed him medically fit to work. Plaintiff was provided the requisite time-off required pursuant to § 2612(a)(1)(D). Plaintiff resumed his prior position upon his return to work on March 7, 2006. Plaintiff admits to having been authorized to return to work by Raghib

23

after he submitted a physician's note. Plaintiff further concedes that he reported to work that

evening during his regular shift. Plaintiff's employment was not terminated until March 10, 2006

and for reasons wholly unrelated to his prior medical leave. The right to reinstatement is not a

shield against being terminated for reasons unrelated to the FMLA lave. See, e.g., Conoshenti,

364 F.3d at 141. In addition to his lack of entitlement, Plaintiff cannot demonstrate that he was

denied any benefits under the FMLA. Thus, Plaintiff does not have a viable cause of action for

FMLA interference as a matter of law.

## IV.   CONCLUSION

For the reasons stated, it is the finding of this Court that Defendant's motion for summary

judgment is **granted**.  An appropriate Order accompanies this Opinion.


                                        S/ Dennis M. Cavanaugh
                                        Dennis M. Cavanaugh, U.S.D.J.

Date:          November   8  , 2007
Orig.:         Clerk
cc:            All Counsel of Record
               Hon. Mark Falk, U.S.M.J.
               File

24